No. 16-1

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, Plaintiff-Appellee,

vs.

CARLOS DAVID CARO, Defendant-Appellant.

Appeal from the United States District Court for the Western District of Virginia
Hon. James P. Jones, District Judge, Presiding
Dist. Ct. No. 1:06CR00001

## REQUEST FOR CERTIFICATE OF APPEALABILITY

JON M. SANDS
Federal Public Defender
District of Arizona
TIMOTHY M. GABRIELSEN
Nevada Bar No. 8076
Assistant Federal Public Defender
407 West Congress Street, Suite 501
Tucson, Arizona 85701
tim_gabrielsen@fd.org
Tel. (520) 879-7614
Facsimile (520) 622-6844

FAY F. SPENCE
Virginia Bar No. 27906
First Assistant Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
fay_spence@fd.org
Tel. (540) 777-0880
Facsimile (540) 777-0890

BRIAN J. BECK
Virginia Bar No. 78049
Assistant Federal Public Defender
201 Abingdon Place
Abingdon, Virginia 24211
brian_beck@fd.org
Tel. (276) 619-6080
Facsimile (276) 619-6090

*Counsel for Defendant-Appellant Carlos David Caro*

Petitioner Appellant Carlos David Caro ("Caro"), through counsel, moves, pursuant to Fourth Circuit Local Rule 22(a)(1)(B), for a Certificate of Appealability ("COA") in order to be permitted to appeal the denial of relief on claims denominated as Uncertified Claims II and III in the Opening Brief filed on this date. Caro relies for support on the attached Memorandum in Support, the Opening Brief and Joint Appendix ("JA") filed concurrently with this Request, and on all pleadings contained in the district court record.

## MEMORANDUM IN SUPPORT

The COA is a jurisdictional requirement to appeal, *see Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2005), for which a petitioner must demonstrate a "substantial showing of the denial of a constitutional right." *See* § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). That demonstration "includes a showing that reasonable jurists could debate whether (or, for that, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* at 484 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)). The Court should expand the COA because reasonable jurists could debate the correctness of the district court's ruling to deny relief on Claim Six (B) and (F), JA 1933-34, 1940-41, for the reasons described below.

1

## UNCERTIFIED CLAIMS

### II.

Whether Carlos Caro was denied his right to the effective assistance of counsel under the Sixth Amendment where his appointed counsel failed to introduce in mitigation evidence of Caro's brain damage and cognitive dysfunction, and diagnoses of Cognitive Disorder NOS and Anxiety Disorder NOS that included symptomatology associated with PTSD due to a traumatic childhood.[1]

**A.    Summary of Argument.**

Prior to trial, a neuropsychologist retained by the defense, Malcom Spica, Ph.D., discovered evidence of brain damage to Caro's cerebral frontal lobes, which he described as "frontal lobe dysfunction," and provided a diagnosis of Cognitive Disorder NOS.  JA 1333.  Claim Six (B) alleged that Caro was denied his Sixth Amendment right to the effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), where his trial counsel failed to introduce at the selection phase of capital sentencing the testimony of Dr. Spica.  JA 110-18.  Caro's brain damage and cognitive dysfunction were corroborated in the § 2255 proceeding by forensic psychiatrist Donna Schwartz-Watts, M.D.  JA 1288-90.

Dr. Schwartz-Watts also reviewed Caro's history of exposure to violence as a child and diagnosed symptoms of Posttraumatic Stress Disorder ("PTSD").  JA 1290-92.  In Claim Six (C) in the § 2255 Motion, Caro alleged ineffective assistance of counsel where trial counsel failed to produce Caro's history of

---

[1]Uncertified Claim II is raised in Caro's Opening Brief at 40 – 54.

exposure to trauma, including severe domestic violence, to a mental health expert

for consideration of mitigating circumstances.  JA 1118-20.

In an Opinion of May 4, 2015, the district court denied relief on both aspects

of Claim Six.  JA 1933-34.  With respect to the failure to call Dr. Spica, the court

ruled:

> The decision to forego mental health evidence was not unreasonable. Trial counsel was not permitted to view the Government's experts' report until after they gave notice of intent to present mental health evidence, and counsel had reasons to believe that the testimony of the Government's expert might be unfavorable to Caro.  In contrast, only one expert available to testify for the defense, Dr. Malcom Spica, Ph.D., had a professional opinion favorable to Caro.  Trial counsel could have decided that Dr. Spica's testimony would not be beneficial enough to overcome harmful testimony of the government's testifying expert. *See Bunch v. Thompson*, 949 F.2d 1354, 1364 (4th Cir. 1991) (finding reasonable a decision not to call a psychiatrist when damaging findings could have been brought out on cross-examination).

JA 1933.  On counsel's failure to produce the horrific social history to a qualified

mental health expert, the court ruled as follows:

> Several mitigating factors concerning Caro's childhood were found by the jury.  Additionally, several relatives testified about negative aspects of Caro's childhood, such as the violent nature of his father. There is not a reasonable likelihood that the testimony of a mental health expert on Caro's childhood trauma would have changed the outcome of the sentencing phase.

JA 1934.

Thus, the decision to deny relief was made on the basis that there was no

*deficient performance* under *Strickland* in not presenting Dr. Spica, and there was

no *prejudice* under *Strickland* in failing to produce Caro's horrific childhood trauma to an expert such as Dr. Schwartz-Watts. Caro makes the showing required by *Slack* that reasonable jurists could disagree with the district court's ruling as to both aspects B and F of Claim Six.

**B.     The COA should be granted pursuant to 28 U.S.C. § 2255(c)(2) and *Slack*.**

The district court's judgment as to Claim Six (B) was informed by this Court's decision in *Bunch*, 949 F.2d 1354. It would be hard to conjure a decision that would be as distinguishable from this case as *Bunch* proves to be. In *Bunch*, defense counsel was aware from a defense psychiatrist's testing that there were aggravating aspects to the evaluation, including "negative aspects of Bunch's self-destructive behavior" and "unusual sexual orientation." 949 F.2d at 1364. Here, in contrast, there was nothing inherently aggravating about Dr. Spica's diagnoses. Dr. Spica found that Caro suffered from brain dysfunction which renders a person susceptible to impulsivity, an inability to comprehend facts in real time, and to understand the consequences of his actions. *See* JA 1333.

Significantly, Bunch's attorneys already had access to the prosecution's expert's opinions *before* they decided not to present the testimony of the defense psychiatrist. *Id.* As this Court noted, "Having interviewed the state psychiatrists in addition to their own witness, counsel made a reasoned strategic choice not to offer psychiatric testimony." *Id.* Here, the district court focused on Caro's lack of

4

access to the sealed combined report of Dr. Robert Phillips, M.D., and Dr. Paul Montalbano, Ph.D., as a factor that rendered the failure to present Dr. Spica's opinions strategic. In short, the court determined that Caro's trial counsel could make a strategic decision not to present mental health mitigation unencumbered by knowledge of any of the supposed aggravating opinions or circumstances contained in the report of the Government's witnesses.

In addition, the district court reached back to a 1991 opinion of this Court, *Bunch*, which predates the Supreme Court's modern jurisprudence that controls questions as to the appropriate scope of investigation and the vitally important presentation of defense mental health mitigation in a capital case. The cases and relevant principles began with the decision in *Williams* (*Terry*) *v. Taylor*, 529 U.S. 362 (2000). There the Court found ineffective assistance where counsel failed to investigate and present evidence of their client's dysfunctional childhood, and failed to introduce existing evidence that he suffered from borderline mental retardation. *Id.* at 395-96. The decision cited 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d ed. 1980), to inform it as to the standard of care owed by counsel with respect to his investigation of his client's background.

In *Wiggins v. Smith*, 539 U.S. 510, 524 (2003), the Court found ineffective assistance based on counsel's failure to investigate their client's traumatic childhood, citing Guideline 11.4.1(C) of the ABA Guidelines on the Appointment

5

and Performance of Defense Counsel in Death Penalty Cases (1989), which required not only the investigation and presentation of such evidence, but also the duty of counsel to rebut aggravating evidence.

In *Rompilla v. Beard*, 545 U.S. 545 U.S. 374 (2005), the Court vacated a death sentence on the basis that counsel rendered ineffective assistance, in part for failing to produce the defendant's social history to mental health experts taxed with evaluating him for capital sentencing. The social history, which counsel failed to produce to the defense experts prior to trial and which initially rendered benign diagnoses with respect to mental health mitigation, *id.* at 382, contributed in post-conviction proceedings to mitigating diagnoses of brain damage and cognitive dysfunction. *Id.* at 392. Trial counsel's failure to produce the horrific social history to a forensic psychiatrist constituted deficient performance under *Strickland*. The Court quoted the 2003 ABA Guidelines as being an "even more explicit" statement of a guide than earlier ABA pronouncements as to what reasonably competent counsel is required to do with respect to investigating and presenting mitigation, including mental health mitigation, and countering aggravation at capital sentencing. *Rompilla*, 545 U.S. at 387.

Thus, *Rompilla*, 545 U.S. 374, requires the production of a client's traumatic social history to a qualified mental health expert *and* the introduction of mitigating mental health diagnoses at sentencing. *Terry Williams*, 529 U.S. 362, requires

6

*inter alia* the presentation of existing mental health mitigation at sentencing. Significant to this case, in *Porter v. McCollum*, 558 U.S. 30, 36 (2009), the Court ruled counsel's performance to violate *Strickland* where counsel failed to produce evidence of trauma the client suffered during the Korean War to a mental health expert prior to trial, and an expert concluded in post-conviction proceedings that Porter suffered from PTSD. The expert further concluded, after neuropsychological testing that Porter suffered from brain damage as well. *Id.*

Here, the district court failed to acknowledge any of the Supreme Court cases that have found counsel's performance to have been deficient in *Williams*, *Wiggins*, and *Rompilla*, all of which predate Caro's trial and should have informed his counsel as to the standard of care they owed him at capital sentencing. The district court further failed to acknowledge the various ABA guidelines cited in those case, which the Supreme Court has ruled to constitute "guides" as to what is "reasonable" when it comes to defense counsel's performance at capital sentencing. *See Bobby v. Van Hook*, 558 U.S. 4, 8 (2009). Reasonable jurists could, at a minimum, debate whether the district court employed the correct legal standard to determine whether counsel's omission in failing to call Dr. Spica at sentencing was reasonable or whether *Bunch* was antiquated and could not control as to the standard of care.

Reasonable jurists could also debate whether it was reasonable for Caro's counsel to decide not to present Dr. Spica's opinions where the balance of the defense case in mitigation consisted only of: 1) the testimony of violent risk assessment expert Dr. Mark Cunningham, PhD., a defense psychologist, JA 662, whose testimony, largely based on anecdotal accounts as to how long ADX Florence might hold Caro if he were not sentenced to death, was rebutted by retired BOP Warden Gregory Hershberger, JA 824, who testified that Caro would only be held for three years before being "stepped-down" to a less secure facility; and, 2) the testimony of his wife (JA 606), three aunts (JA 478, 546, 567), a cousin (JA 584), and an eighth grade math teacher (JA 532), to the effect that he was a loving but undependable husband due to involvement with drugs, he was exposed to domestic violence as a child but did not exhibit signs of violence, he experienced developmental delays and neglect, and he performed poorly in school before dropping out in ninth grade. As is noted in Certified Claim I in the Opening Brief, at 22 - 40, the defense was hamstrung in its efforts to show that Caro could be held indefinitely at ADX Florence, where the district court sustained the Government's objection to the magistrate's order requiring the Government to produce actual BOP data on lengths of confinement at ADX Florence and other relevant information. The impact of the testimony of family members was *de minimis* because all could only testify concerning distant memories of their experiences

8

with Caro.  The most recently any family member had seen Caro was seven years prior to capital sentencing.  *See* JA 623 (wife); JA 600 (cousin).

Reasonable jurists could also debate the correctness of the district court's decision that Caro was not prejudiced by counsel's decision not to produce evidence of his traumatic childhood to a mental health expert such as Dr. Schwartz-Watts, who was retained in the § 2255 proceeding.  Contrary to the district court's ruling, the presentation of lay observations of a traumatic childhood is not coextensive with the opinions of a mental health expert whose opinions are, in part, based on the client's history.

Caro's lay witnesses could not convey to the jury the effect of the traumatic childhood on his mental functioning.  Dr. Schwartz-Watts averred that "the developmental delays which were reported by his family members prior to and during his trial . . . can be seen in children with cognitive impairments and in children who are exposed to trauma."  JA 1290.  His eighth grade math teacher testified that his school records reflected many bad grades, JA 541, but she could not testify to why he received those grades.  Of course, Caro's jury learned nothing of his significant cognitive impairment because his counsel failed to call Dr. Spica and failed to retain an expert like Dr. Schwartz-Watts.

Dr. Schwartz-Watts also found Caro to suffer from certain symptoms of PTSD, which she described as follows:

> Mr. Caro has difficulty recalling specific details of traumas he witnessed; he has poor memory of his childhood. Mr. Caro avoids discussing witnessing his mother's physical abuse and avoids describing his own abuse at the hands of his brother. He denies having a startle response but admits being hyper alert when he is in the general prison population . . . Mr. Caro has noted a decrease in his alertness since he takes recreation alone due to his status.

JA 1290 ¶ 20. She also diagnosed Anxiety Disorder NOS, JA 1292 ¶ 30, and Cognitive Disorder NOS, which causes "problems with verbal fluency, short term memory, [and] long term memory." JA 1293 ¶ 33. She concluded that, as a result of his trauma history, "he tends to become more increasingly anxious and unable to use all of the cognitive strategies available to him. His baseline cognitive impairments are further exacerbated by his anxiety disorder. What this means is that when Mr. Caro becomes anxious, he is more likely to exercise poor judgment." JA 1295 ¶ 41.

That Caro experiences startle responses and hyper alertness to prison stimuli, anxiety, and aversion to thinking about traumatic events in his life, all of which Dr. Schwartz-Watts attributed to his childhood, are precisely the kinds of human frailties the Supreme Court described as admissible as mitigating circumstances at capital sentencing in *Eddings v. Oklahoma*, 455 U.S. 104, 116 (1982), where the Court also found significant the capacity of a defense psychiatrist to relate to the jury the implications of such trauma. *Id.* at 107-08.

10

Reasonable jurists could debate whether the district court grasped the significance of Dr. Schwartz-Watts' opinions that flowed from Caro's history of exposure to abuse.

### III.

Whether Carlos Caro was denied his right to the effective assistance of counsel under the Sixth Amendment where trial counsel failed to investigate and challenge in a separate collateral proceeding Caro's prior federal conviction for conspiracy to commit murder, which was later admitted in aggravation at his capital sentencing hearing.[2]

**A.     Summary of Argument.**

In Claim Six (F) in the § 2255 Motion, Caro alleged he was denied his right to the effective assistance of counsel under the Sixth Amendment and *Strickland* where trial counsel failed to investigate and challenge in a collateral proceeding the constitutionality of Caro's prior federal conviction for conspiracy to commit murder, where that conviction was admitted at capital sentencing to support the Government's theory in aggravation that Caro would be dangerous in the future if the jury failed to sentence Caro to death, and the sentence of 27 years supported the Government's argument that, given the length of Caro's sentences on other convictions, a sentence less than death would amount to no punishment at all.

The district court denied relief on the basis that "[i]t is certainly within the bounds of professional norms to focus on the case at hand rather than attempting to challenge and reinvestigate prior convictions." JA 1941. The court cited no case

---

[2] Uncertified Claim III is raised in Caro's Opening Brief at 54-56.

11

or provision of the various ABA guidelines for the proposition that counsel in a capital case has no duty to reinvestigate or challenge a prior conviction later employed as an aggravating circumstance at capital sentencing.

**B.     The COA should be granted pursuant to 28 U.S.C. § 2255(c)(23) and *Slack*.**

As Caro notes in the Opening Brief, defense counsel's duties to reinvestigate a prior conviction to be used in aggravation at a later capital sentencing hearing were well established at the time of Caro's 2007 trial.  The Commentary to Guideline 10.7 of the ABA Guidelines on the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. 2003), states: "Counsel must also investigate prior convictions . . . If a prior conviction is legally flawed, counsel should seek to have it set aside." In *Rompilla v. Beard*, 545 U.S. 374, 383-86 (2005), the Court cited approvingly the Commentary to ABA Guideline 10.7 and granted habeas relief where counsel was given notice prior to trial that the prosecution intended to introduce the defendant's prior rape and assault convictions but failed to review the public file on those offenses that would have provided mitigating circumstances unavailable from any other source.  Caro's expert *Strickland* counsel, Larry Hammond, a well-credentialed attorney who clerked for Justices Lewis Powell and Hugo Black, and who has more than 30 years' experience representing capital clients and serving as a consultant and expert *Strickland* counsel in capital cases at all stages, JA 1230-31, averred that

12

"[a]nother important part of defense counsel's obligation in capital cases is to investigate and to challenge where appropriate prior convictions that are used by the Government as aggravating factors." JA 1241-42 ¶ 37.

Reasonable jurists could debate the correctness of the district court's decision to deny relief, where that decision was premised on a belief, unsupported by case law or appropriate ABA guideline that defense counsel has no such obligation.

Caro concedes that the Court's decision whether to grant relief on the merits of Uncertified Claim III in the Opening Brief must await the Court's ruling on the appeal that challenges the denial of relief on the prior conviction, which alleges ineffective assistance of counsel for failing to admonish Caro of the collateral consequence of his guilty plea, to wit, that the conviction for conspiracy to commit murder would be admitted in this later capital sentencing hearing. That appeal pends. *See United States v. Caro*, Fourth Cir. No. 16-6027. Should the Court reverse the district court and vacate Caro's conviction, he would be entitled to relief pursuant to *Johnson v. Mississippi*, 486 U.S. 578 (1989), where his death sentence rested in large part on an invalid aggravator.

/    /    /

/    /    /

13

WHEREFORE, Caro respectfully requests that the Court issue a Certificate of Appealability as to Uncertified Claims II and III, and order the Government to respond to those claims in the Opening Brief.

Respectfully submitted this 19th day of December, 2016.

<u>s/Timothy M. Gabrielsen</u>
Timothy M. Gabrielsen
Fay F. Spence
Brian J. Beck
Assistant Federal Public Defenders

Attorneys for Defendant-Appellant

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2016, I electronically filed the attached document with the clerk of Court using the CM/ECF System which will send notice of such filing to the following registered CM/ECF users:

Jean B. Hudson
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902


s/Teresa Ardrey
Legal Assistant