UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Appellee, | ) | Appeal No. 16-1 |
| | ) | |
| v. | ) | |
| | ) | |
| CARLOS CARO, | ) | |
| | ) | |
| Appellant. | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO CARO'S
MOTION TO EXPAND THE CERTIFICATE OF APPEALABILITY**

Petitioner-Appellant Carlos David Caro ("Caro"), has moved, through

counsel, pursuant to Fourth Circuit Local Rule 22(a)(1)(B), for a certificate of

appealability ("COA") regarding Claims II and III in his Opening Brief.   For the

reasons set forth below, the United States argues that the request to expand the

certificate of appealability should be denied.

**ARGUMENT**

I.    Caro has not established that he is entitled to a certificate of appealability
regarding his claim Six B .

To prove ineffective assistance of counsel, Caro must satisfy a two-pronged

test set requiring him to show (1) "that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment[,]" meaning that counsel's representation fell below an objective

standard of reasonableness, and (2) that counsel's deficient performance prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 687-88, 694 (1984). If a petitioner fails to satisfy either prong of the *Strickland* test, a court does not need to inquire whether he has satisfied the other prong. *Id.* at 697.

A showing of prejudice requires the defendant to prove that "counsel's errors were so serious as to deprive the defendant of a fair trial." *Strickland,* 466 U.S. at 687; *Byram v. Ozmint,* 339 F.3d 203, 209 (4th Cir. 2003). In the context of a capital sentencing proceeding, the question is whether "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (citing *Wiggins v. Smith,* 539 U.S. at 510, 534 (2003)(internal citation and quotation omitted)). Assessing prejudice requires this Court to "reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins,* 539 U.S. at 534.

*Strickland* established a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland,* 466 U.S. at 689, and the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.; see also, Bowie v. Branker,* 512 F.3d 112, 119 n.8 (4th Cir. 2008). "Judicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight . . . and to evaluate

2

the [challenged] conduct from counsel's perspective at the time." *Id*. "[E]ffective representation is not synonymous with errorless representation." *Springer v. Collins*, 586 F.2d 329, 332 (4th Cir. 1978).

It is the responsibility of counsel to adequately investigate and present evidence in mitigation of guilt. *Byram,* 339 F.3d at 209 (citing *Williams v. Taylor,* 529 U.S. at 395). However, counsel is only required to make a reasonable investigation for possible mitigating evidence. *Id*., citing *Matthews v. Evatt,* 105 F.3d 907, 919 (4th Cir.1997). Less than complete investigations may form the basis for strategic choices, so long as "'reasonable professional judgments support the limitations on investigation.'" *Wiggins,* 539 U.S. at 533 (quoting *Strickland,* 466 U.S. at 690-91); *Byram*, 339 F.3d at 209. Moreover, review of counsel's strategic decisions as to which evidence to present at trial is "highly deferential," and there is a presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Byram*, 339 F.3d at 209, (citing *Strickland,* 466 U.S. at 689).

Reasonableness is the benchmark by which Counsel's performance is measured. *Strickland,* 466 U.S. 668, 688–92. The American Bar Association Guidelines for the Appointment and Performance of Counsel in Capital Cases (the "ABA Guidelines") are not the standards to determine what is "reasonable" for defense counsel in capital litigation. Rather, the ABA Guidelines are merely meant

to serve as models for what is reasonable; strict adherence is not required by the law. *Hummel v. Rosemeyer,* 564 F.3d 290, 302 (3d Cir. 2009); *Showers v. Beard,* 635 F.3d 625, 633 (3d Cir.2011)

A certificate of appealability will issue only if § 2253's requirements have been satisfied. *Miller-El v. Cockrell*, 537 U.S. 322, 323–24 (2003). The prisoner need only demonstrate "a substantial showing of the denial of a constitutional right." *Id.*; § 2253(c)(2). The prisoner must demonstrate that jurists of reason could disagree with the district court's resolution of his case or that the issues presented were adequate to deserve encouragement to proceed further. *Id.*, *citing Slack v. McDaniel,* 529 U.S. 473, 484 (2000). He need not convince a judge, or, for that matter, three judges, that he will prevail, but must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id.* For all the reasons below, Caro has not established that a COA should be granted.

The district court concluded below that "[t]rial counsel could have decided that Dr. Spica's testimony would not be beneficial enough to overcome harmful testimony from the government's testifying expert." JA 1933. The district court in this case correctly concluded that Caro had not established that helpful testimony could have been elicited from the additional experts. Counsel made a "reasoned strategic choice" and just as in *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991),

4

to use that decision as a basis for finding ineffective assistance would create a rule whereby counsel would be required always to offer psychiatric testimony, regardless of the risks. *See also Walton v. Angelone*, 321 F.3d 442 (2003). This Court has refused to create such a rule. *See id.; Meyer v. Branker*, 506 F.3d 358, 372 (4th Cir. 2007).

In *Bunch,,* trial counsel did not call a psychiatrist to testify about the defendant's childhood and mental state and this Court refused to find ineffectiveness because counsel had made a strategic choice not to offer testimony in light of harmful evidence which would have emerged on cross examination. 949 F.2d 1354, 1364-65 (4th Cir. 1991). The Court stated, "Counsel was aware of this beneficial testimony but was also cognizant of the risks involved if the [witness] had taken the stand." *Id*. at 1364. Noting the decision was strategic, the Court of Appeals denied defendant's claim because he did not show that the "'identified acts or omissions were outside the wide range of professionally competent assistance.'" *Id*. at 1365. Though Bunch's attorneys had interviewed the state's psychiatrist in that case, the holding from *Bunch* is equally applicable here, and the district court's reliance upon it was sound. The *Bunch* Court concluded that defense counsel had made a "reasoned strategic choice not to offer psychiatric testimony," and that "[t]o use that decision as a basis for finding ineffective assistance would be to institute a rule that psychiatric testimony should always be offered in the

sentencing phase, no matter how counterproductive or damaging." *Bunch*, 949 F.2d at 1364. The Court concluded, saying "[t]his we refuse to do." *Id*. The *Bunch* attorneys weighed the risk of presenting their own psychiatrist,and the *Bunch* Court concluded that counsel's decision was a "reasoned strategic choice" on the facts that were available to defense counsel in that case, including the knowledge of the "damaging findings" from the government's evaluations. *Id*. at 1363-64. Here, too, Caro's counsel had information of damaging findings – though from their *own* psychiatrist's evaluation – which led them to an equally reasoned strategic choice not to present evidence. Caro's counsel had only one expert with a professional opinion favorable to Caro, combined with their other expert, Dr. Caruso, who had reported that he had information that was "not helpful to the defense." JA 1256. Counsel knew that Dr. Phillips' "had a good reputation and was known to present well on the stand." JA 1257. Counsel had reason to logically conclude that the same unhelpful evidence that became known to Dr. Caruso might well come to light through Dr. Phillips, and counsel did not believe that they could rebut Phillips' testimony.[1] Thus, though they did not have the

---

[1] Further, as the government pointed out in its pleading below, defense counsel's decision was validated by Dr. Phillips' findings in his report to the court dated January 29, 2007, in which he reported that Caro "reported a happy childhood and denied any history of abuse." JA 2036. The report further indicated that "within a reasonable degree of medical and psychiatric certainty, . . .Caro is a man of low-average to average intellectual functioning who does not demonstrate any deficits in adaptive functioning . . .(t)here was no evidence that Mr. Caro suffers from any mental or emotional condition that . . .impairs his capacity to meet the tasks of day-to-day living." JA 2061. Additionally, "twelve psychological reviews performed by seven different psychologists

benefit of the government's expert's report, they had their own expert giving them every reason to anticipate, that if they had "called their psychiatrist, harmful evidence would have emerged on cross examination." *Bunch*, 949 F.2d at 1364.

Caro also argues that more recent cases from the Supreme Court render *Bunch* archaic, but Caro's arguments do not establish that he is entitled to a certificate of appealability on this issue.

The district court in this case determined at the outset that "there was no indication that trial counsel failed to conduct a reasonable investigation into Caro's background." JA 1930. In doing so, the district court first properly recognized the Supreme Court's decision in *Wiggins v. Smith*, and acknowledged that "[i]t is well settled that defense counsel must conduct a reasonable investigation into mitigating evidence to be presented during the penalty phase, and that failure to present mitigating evidence cannot be justified as a tactical decision unless the duty to investigate has been fulfilled." JA 1930, citing *Wiggins*, 539 U.S. at 522-23. In *Wiggins v. Smith*, the Supreme Court found that where counsel did not conduct a reasonable investigation because "[t]heir decision not to expand their investigation beyond a presentence investigation (PSI) report and Baltimore City Department of Social Services records fell short of the professional standards prevailing in

---

at five different federal correctional facilities consistently found that his mental status was within normal limits." JA 2038.

Maryland in 1989." 539 U.S. at 511. In the postconviction proceedings, Wiggins "presented expert testimony by a forensic social worker about the severe physical and sexual abuse he had suffered at the hands of his mother and while under the care of a series of foster parents." *Id*. at 510. Wiggins' attorneys testified that they had "decided to focus on retrying the factual case and disputing Wiggins' direct responsibility for the murder." *Id*. The *Wiggins* Court observed that just as in *Strickland*, Wiggins' counsel claimed that their limited investigation was the result of a tactical decision not to present mitigating evidence and to pursue an alternative strategy instead. *Id*. at 511. The Court explained that in evaluating Wiggins' claim, the "Court's principal concern is not whether counsel should have presented a mitigation case, but whether the investigation supporting their decision not to introduce mitigating evidence of Wiggins' background was *itself reasonable*." *Id*. (emphasis in original). After finding the investigation was not reasonable, the Court further noted that "[u]ltimately, this Court's conclusion that counsel's investigation was inadequate does not mean that *Strickland* requires counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing. Nor does *Strickland* require counsel to present such evidence at sentencing in every case. Rather, the conclusion is based on the much more limited principle that 'strategic choices made after less than complete investigation are reasonable' only to the extent that

8

'reasonable professional judgments support the limitations on investigation.'" *Id*. at 512, citing and quoting *Strickland*, at 690-91.

In another of Caro's cases, the Supreme Court concluded that trial counsel had not fulfilled "their obligation to conduct a thorough investigation . . .." *Williams v. Taylor*, 529 U.S. 362, 396 (2000).    The Court found that counsel had failed to discover or offer mitigating evidence on Williams' behalf, and that he was prejudiced by his counsel's failure. *Id*. at 363-64, 396-97.  The record in *Williams* revealed that:

> "counsel failed to prepare for sentencing until a week beforehand, to uncover extensive records graphically describing Williams' nightmarish childhood, to introduce available evidence that Williams was 'borderline mentally retarded,' . . ., to seek prison records recording Williams' commendations . . ., and to discover the testimony of prison officials who described Williams as among the inmates least likely to act violently . . ., and of a prison minister that Williams seemed to thrive in a more regimented environment."

*Id*. at 363-64.  The *Williams* Court concluded that "[a]lthough not all the additional evidence was favorable to Williams, the failure to introduce the comparatively voluminous amount of favorable evidence was not justified by a tactical decision" and that counsel had not fulfilled their ethical obligation thoroughly investigate Williams' background." *Id*. at 364, 396.

In this case, Caro's counsel adequately and effectively investigated, developed and presented relevant mitigating testimony from family and others, in an attempt to humanize Caro.  They presented two prison experts who stated that

9

although Caro continued to pose a danger to other inmates, the BOP could effectively control him with a life sentence. JA 1352. Further, the jury found twelve mitigating factors. JA 1353. Thus, in stark contrast to the scenarios in *Williams* and *Wiggins*, the record in this case establishes that counsel did thoroughly investigate the avenues available to them for mitigating evidence, and that having conducted a reasonable and effective investigation, they made a reasoned and strategic decision not to present mental health evidence on behalf of Mr. Caro. In that light, the district court was correct in the standard he applied – from *Wiggins* – requiring him to determine whether Caro's counsel conducted a reasonable investigation, and he was likewise correct in determining that they had. The record in this case establishes that Caro's counsel weighed the beneficial evidence they had along with the damaging evidence their own investigation had developed through Dr. Caruso, against the likelihood of harmful cross-examination and other harmful testimony.

None of the cases cited by Caro stand for the proposition that defense counsel must always present mental health evidence in mitigation, without any strategic analysis, or no matter the consequences, though Caro argues that *Rompilla* "*requires* the production of a client's traumatic social history to a qualified mental health expert *and* the introduction of mitigating mental health diagnoses at sentencing." *Request* at 6 (emphasis added on "requires"; emphasis in

original on "and"). In *Rompilla v. Beard*, 545 U.S. 374 (2005), the Supreme Court held that "[e]ven when a capital defendant and his family members have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the trial's sentencing phase." *Id.* at 374. The facts in *Rompilla* are distinguishable from those in Caro's case, however, and the holding of *Rompilla* does not stand for the proposition that there can never be a strategic decision to not present mental health evidence in mitigation. In *Rompilla*, the lawyers failed to examine the court file on Rompilla's prior rape and assault conviction when they knew that the Commonwealth would seek to prove that Rompilla had a significant history of felony convictions indicating the use or threat of violence through the use of that prior conviction, and that it would "emphasize his violent character by introducing a transcript of the rape victim's trial testimony." *Id.* at 375. The file containing the prior conviction was a public record available at the courthouse, but his counsel did not look at the file until the government warned them a second time, and then still did not examine the entire file. *Id.* The *Rompilla* Court concluded that "it is difficult to see how counsel could have failed to realize that not examining the file would seriously compromise their opportunity to respond to an aggravation case," and that their "duty to make all reasonable efforts to learn what they could about the offense"

11

certainly included looking at that file to see what the government knew about the crime, to discover any mitigating evidence the government might downplay, and to anticipate what the government might emphasize. *Id*.

The *Rompilla* Court rejected the notion asserted in the dissent, that the Court's analysis created a "rigid, per se rule that requires defense counsel to do a complete review of the file on any prior conviction introduced." *Id*. The Court said instead that Rompilla's counsel were ineffective because "they failed to make reasonable efforts to review the prior conviction file, despite knowing that the prosecution intended to introduce Rompilla's prior conviction not merely by entering a notice of conviction into evidence but by quoting damaging testimony of the rape victim in that case," and that their deficient performance was "heightened by the easy availability of the file" at the courthouse and the "great risk that testimony about a similar violent crime would hamstring counsel's chosen defense of residual doubt." *Id*. at 389-90. The Court concluded that it was "owing to these circumstances" that the state court decisions were unreasonable, while at the same time observing that in "[o]ther situations, where a defense lawyer is not charged with knowledge that the prosecutor intends to use a prior conviction in this way, might well warrant a different assessment." *Id*.

Finally, in *Porter v. McCollum*, 558 U.S. 30 (2009), the Supreme Court held that defense counsel's failure to uncover and present mitigating evidence regarding

the defendant's mental health, family background or military service during the penalty phase was deficient. The defense presented in mitigation some very limited mitigation evidence, and told the jury that he "'ha[d] other handicaps that weren't apparent during the trial' and that Porter was not 'mentally healthy,' [but] he did not put on any evidence related to Porter's mental health." *Porter*, 558 U.S. at 32. During the postconviction proceedings, Porter presented new evidence establishing that he had an abusive childhood, and witnessed horrible domestic violence episodes of his father attacking him and his mother. *Id*. at 33-34. Porter presented evidence of great heroism during the Korean War, and evidence of his two Purple Hearts and other very significant awards and decorations. *Id*. at 34-35. Porter also presented evidence of the psychological effects of the traumas he endured in the war, and finally, an expert in neuropsychology who concluded that "Porter suffered from brain damage that could manifest in impulsive, violent behavior." *Id*. at 36. The expert testified that at the time of the crime, "Porter was substantially impaired in his ability to conform his conduct to the law and suffered from an extreme mental or emotional disturbance, two statutory mitigating circumstances" under Florida law. *Id*. Again, as in the above cases, the facts in Porter are very different from those in Caro's case. Porter's counsel had been standby counsel until just over a month prior to the sentencing proceeding. *Id*. at 39. Porter's case was his attorney's first penalty-phase proceeding, and at the

13

postconviction hearing, "he testified that he had only one short meeting with Porter regarding the penalty phase," and that he had not "obtain[ed] any of Porter's school, medical, or military service records or interview[ed] any members of Porter's family." *Id.* The *Porter* Court looked to *Wiggins*, and found that Porter's counsel "did not even take the first step of interviewing witnesses or requesting records." *Id.*, citing *Bobby v. Van Hook*, 558 U.S. 4 (2009)(holding that counsel's performance was not deficient when counsel gathered a substantial amount of information and then made a reasonable decision not to pursue additional sources). 558 U.S. at 39. Further, the Court found that "[b]eyond that, like the counsel in *Wiggins*, he ignored pertinent avenues for investigation of which he should have been aware." *Id.* at 40. The *Porter* Court concluded that Porter "may have been fatalistic or uncooperative, but that does not obviate the need for defense counsel to conduct *some* sort of mitigation investigation." *Porter*, 558 U.S. at 40 (internal citation omitted)(emphasis in original). But turning to Caro's case, counsel did investigate Caro's mental health background, and learned from one of their own experts that there was information "not helpful to the defense." Clearly they conducted an investigation that removes them from a successful comparison with *Porter* and *Rompilla*, and for that reason, Caro should not be granted a certificate of appealability.

14

Phillips' report only validates counsel's concerns, and even though Caro's counsel had not seen Phillips' report before they made their decision not to present Dr. Spica, the risks inherent in calling Dr. Spica were clear after Dr. Caruso's conclusions were communicated to counsel, and there was nothing before them at the time that would suggest that their considered decision to forego Dr. Spica's testimony was beyond the realm of professional norms. See JA 1256-1257. Based on Dr. Caruso's conclusions, counsel could reasonably expect that Phillips would provide information that would be extremely damaging to their case for mitigation, and that Dr. Spica's testimony would not have been sufficient to justify taking that risk. *See Bunch*, 949 F.2d at 1364.

Caro also asserts that the district court failed to acknowledge any of the Supreme Court cases that have found counsel's performance to have been deficient in *Williams*, *Wiggins* and *Rompilla*, nor the ABA guidelines cited in those cases in which "the Supreme Court has ruled to constitute 'guides' as to what is 'reasonable' when it comes to defense counsel's performance at capital sentencing." *Request* at 7. But Caro is incorrect. As already noted, the district court began its analysis with *Wiggins*, and its directives regarding reasonable investigation into mitigating evidence for the penalty phase. *See Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003)." JA 1930. The portion of the *Wiggins* case that the district court cites begins with an analysis of *Williams*, and with citations

15

to the ABA standards and a discussion of why the claims in *Williams* was found to be meritorious. JA 1930; *Wiggins*, 539 U.S. at 522-23. The *Wiggins* Court noted there, "[i]n highlighting counsel's duty to investigate, and in referring to the ABA Standards for Criminal Justice as guides, we applied the same 'clearly established' precedent of *Strickland* we apply today. Cf. 466 U.S. at 690-691, 104 S.Ct. 2052 (establishing that 'thorough investigation[s]' are 'virtually unchallengeable' and underscoring that 'counsel has a duty to make reasonable investigations'); *see also id.*, at 688-89, 104 S.Ct. 2052 ('Prevailing norms of practice as reflected in American Bar Association standards and the like . . .are guides to determining what is reasonable.')." *Wiggins*, 539 at 522.

Further, regarding the ABA Guidelines, this Court has previously held, "[t]hough the ABA Guidelines, which emphasize the importance of mental health mitigation evidence, may be of some relevance in determining what constitutes reasonable performance in a capital trial, *see Rompilla*, 545 U.S. at 387, 125 S.Ct. 2456, *Wiggins*, 539 U.S. at 524, 123 S.Ct. 2527, they certainly cannot be dispositive in and of themselves." *Meyer*, 506 F.3d at 372. There simply is no *per se* rule requiring the presentation of mental health evidence. *Id.*

Counsel also investigated Caro's childhood and as the district court observed, several witnesses testified about the negative aspects of his childhood, resulting in the jury finding mitigating factors in Caro's favor. JA 1934. The

16

strategic decision to forego presenting additional mental health evidence was not unreasonable in this light.

Caro's argument that his counsel's decision not to present Dr. Spica's testimony was unreasonable in light of the volume of the other mitigating evidence is not persuasive. *Request* at 8-9. But whatever the volume or impact of that testimony and evidence, counsel still had a responsibility to weigh the impact of presenting Dr. Spica's testimony against the likelihood of harmful cross-examination and other damaging testimony from the government's expert, which they anticipated in light of their own expert's conclusions as expressed by Dr. Caruso.

Finally, Caro's later evidence from Dr. Spica and Dr. Schwartz-Watts does not establish that his counsel were unreasonable or ineffective. The failure of the defense to call certain witnesses is not sufficient grounds for a Sixth Amendment claim. *Strickland*, 466 U.S. 668, 690 (strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable); *United States v. Hughes*, 635 F.2d 449, 453 (5th Cir. 1981)(discussing failure to call alibi witnesses); *Lema v. United States*, 987 F.2d 48, 54 (1st Cir. 1993)(decision whether to call particular witness is almost always strategic). Additionally, this Court has long held that a "failure to 'shop around' for a favorable expert opinion after an evaluation yields little in mitigating

evidence does not constitute ineffective assistance." *Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992).

Nor can Caro establish that he was prejudiced by the failure of his counsel to present mental health evidence because there is not a reasonable likelihood that the additional testimony would have changed the outcome of the proceeding. Most importantly, as the court noted, the jury heard evidence from his aunts, cousin, teacher and wife, and on the basis of their testimony found several mitigating factors in Caro's favor before deciding on the penalty. When assessing prejudice, and "reweigh[ing] the evidence in aggravation against the totality of available mitigating evidence," Caro has not shown that the outcome of his case would be any different.

II.    <u>Caro has not established that he is entitled to a certificate of appealability regarding his claim Six F.</u>

The government pointed out in its opposition that Caro's plea agreement was proposed by Caro's co-defendant and co-conspirator, Moreno-Marquez. The plea agreement clearly benefitted Moreno-Marquez much more than Caro. Dene Declaration, ¶ 5. But though Dene states that Caro would have gone to trial if he had recommended it, Dene does not state that he would have recommended trial plead not guilty and proceed to trial if he had known that his guilty plea would be used against him in the penalty phase of the Sandoval case.

Dene Declaration; JA 1400. Further, other than Dene's declaration, there is no evidence that Caro would have accepted the recommendation. Caro, for his part, has not submitted an affidavit stating that he would have proceeded to trial if he had simply known that the conviction would be used in the penalty phase, but only asserts through counsel in his habeas petition that he "would have gone to trial if his attorney had advised him," citing to Dene's declaration that Caro would have done so. Further, the record appears to indicate that the motivation for Caro's plea in the Benavidez case was his desire to benefit his fellow gang member, Moreno Marquez. Dene Declaration, ¶ 5. Finally, the government asserted that there is no reasonable probability that the results of the penalty phase would have been different for Caro, given that, among other things, "Caro's *actions* in the [Benavidez] case would still have been admissible against him in the Sandoval case." JA 1401 (emphasis in original).

The district court denied Caro's claim, finding that a petitioner "has no Sixth Amendment right to counsel in order to mount a collateral challenge to his conviction." JA 1941; *United States v. Williamson*, 706 F.3d 405, 416 (4th Cir. 2013). The court concluded that "it follows that trial counsel was not ineffective for failing to file a collateral challenge to an earlier conviction," and that it was within the bounds of professional norms to focus on the case at hand rather than attempting to challenge and reinvestigate prior convictions." JA 1941. The court

concluded as well that trial counsel "was not ignorant of the Benavidez assault" and that they had contacted Caro's prior counsel, talked to him and collected a portion of his files to review. JA 1941. Because the Sandoval case was a complex murder case and the prior conspiracy to commit murder conviction was only one element of the trial, the court found that trial counsel "acted reasonably in researching this prior conviction, but devoting the majority of their attention to the case at hand." JA 1941.

The government agreed in the proceedings below that failure to advise a defendant of collateral consequences of a plea could be a basis to invalidate a guilty plea in that case. *Padilla v. Kentucky*, 559 U.S. 356 (2010); *United States v. Akinsade*, 686 F.3d 348 (4th Cir. 2012). Caro cites *Rompilla*, 545 U.S. at 383-86, in his brief for the proposition that "reasonably competent counsel has a duty to challenge prior convictions that will be admitted at the capital sentencing hearing." But in *Rompilla*, as set forth above, counsel were ineffective for failing to investigate a conviction that the prosecution were going to use, and so remiss in their research that they should have realized that not examining the file would have "seriously compromised their case." *Id*. at 375. Of course counsel needs to investigate prior convictions to prepare to "learn what they can about the offense," . . .to discover any mitigating evidence it would downplay, and to anticipate the details it would emphasize." *Id*. But it is a far different thing to say that counsel is

20

ineffective for not filing a collateral attack on a prior conviction, all while simultaneously preparing for a capital murder trial. And as the court pointed out, where the defendant does not have a Sixth Amendment right to counsel to mount a collateral challenge to a conviction.

Further, even if the Benavidez case had not been concluded prior to the resolution of the Sandoval penalty phase, the United States would still have introduced evidence of the facts and circumstances of the assault in support of the future dangerousness aggravating factor. *See* 18 U.S.C. § 3593(c); *United States v. Basham*, 561 F.3d 302 (4th Cir. 2009). Accordingly, the district court properly denied Caro's claim on this issue. The evidence against Caro was quite strong, as summarized above, including video of the incident, a witness who can identify Caro from the video, the weapon, and the place it was found in relation to Caro's actions in the video, DNA evidence, and Moreno-Marquez's statements afterwards conclusively establish Caro's role in the brutal attack.[2] Caro's actions in the Benavidez case establish his dangerousness – it was his conduct, not the fact of the conviction that informed the jury of his violent nature, and based on the evidence that was presented at the penalty phase establishing his involvement in the attack, the United States would still have the same compelling basis to argue that Caro

---

[2] In that light, there is no reason to think that Dene would have advised Caro to plead not guilty and proceed to trial, or that if he had, Caro would have fared any better.

21

remained a danger to inmates and others if he were not sentenced to death. Thus, even if the evidence of his plea and sentence in the Benavidez case had been excluded, there is no reasonable probability that the outcome of the penalty proceeding would have been different. *See Spivey v. Head*, 207 F.3d 1263, 1282 (11th Cir. 2000)(Affirming the district court's denial of habeas relief where the "marginal impact of the conviction and life sentence was slight in light of the extensive evidence and brutal nature of the actual underlying conduct" and concluded that the error was harmless because the effect was neither substantial nor injurious.).

RICK A. MOUNTCASTLE
Acting United States Attorney
Western District of Virginia

/s/Jean B. Hudson
Assistant United States Attorney
Virginia State Bar No. 25870
United States Attorney's Office
255 W. Main Street
Charlottesville, Virginia 22902
Telephone: (434) 293-4283
Jean.Hudson@usdoj.gov

22

## CERIFICATE OF SERVICE

I hereby certify that I have this 7th day of February, 2017,  I caused the

foregoing amended response of Appellee to be filed with the Clerk of the Court

using the CM/ECF System, which will send notice, and constitute service, of such

filing to the following registered CM/ECF user(s):  Counsel for the Appellant.


/s/ Jean B.  Hudson
Assistant United States Attorney


23