No. 16-1

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, Plaintiff-Appellee,

v.

CARLOS DAVID CARO, Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia
Hon. James P. Jones, District Judge, Presiding
Dist. Ct. No. 1:06CR00001

## REPLY BRIEF OF APPELLANT CARLOS DAVID CARO

JON M. SANDS
Federal Public Defender
District of Arizona
TIMOTHY M. GABRIELSEN
Nevada Bar No. 8076
Assistant Federal Public Defender
407 West Congress Street, Suite 501
Tucson, Arizona 85701
tim_gabrielsen@fd.org
Tel. (520) 879-7614
Facsimile (520) 622-6844

FAY F. SPENCE
Virginia Bar No. 27906
First Assistant Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
fay_spence@fd.org
Tel. (540) 777-0880
Facsimile (540) 777-0890

BRIAN J. BECK
Virginia Bar No. 78049
Assistant Federal Public Defender
201 Abingdon Place
Abingdon, Virginia 24211
brian_beck@fd.org
Tel. (276) 619-6080
Facsimile (276) 619-6090

*Counsel for Defendant-Appellant Carlos David Caro*

TABLE OF CONTENTS

Claim I....................................................................................................................1

The *Brady* claim based on the Government's suppression of BOP data on length of inmate incarcerations at ADX Florence...................................................................1

    A.      Introduction ................................................................................1

    B.      The *Brady* claim was not "fully considered" by this Court on direct appeal.......................................................................................4

            1.      The Government suppressed the relevant BOP data at trial that would have informed this Court's determination of the materiality of the *Brady* claim. ....................................5

            2.      The present claim is not the "same claim" litigated at trial and on direct appeal. ......................................................10

    C.      The suppressed BOP data was favorable to Caro. .............................12

    D.      The suppressed BOP data was material. .............................................13

Claim II. ...............................................................................................................18

The ineffective assistance of counsel claim premised on trial counsel's failure to introduce in mitigation evidence of Caro's brain damage and cognitive dysfunction, and the failure to perform a thorough investigation of Caro's traumatic social history and produce it to a qualified mental health expert..............................................................................................................18

    A.      Trial counsel performed deficiently at sentencing.............................19

            1.      *Bunch* and the other authorities cited by Appellee are readily distinguishable. ....................................................20

2.   Appellee fails to address *Rompilla's* requirement that defense counsel produce evidence of a client's traumatic social history to a qualified mental health expert as part of a reasonable mitigation investigation. .......................................................... 24

B.   Caro demonstrates *Strickland* prejudice..............................................26

## Table of Authorities

**Supreme Court Opinions**

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ........................................................ 6

*Bousley v. United States*, 523 U.S. 614(1998) ........................................................ 5

*Brady v. Maryland*, 373 U.S. 83 (1963) ................................................. 1, 9-10, 13

*Kyles v. Whitley* 514 U.S. 419 (1995) ........................................................ 8, 10, 14

*Massaro v. United States*, 538 U.S. 500 (2003) ..................................................... 2, 9

*Murray v. Carrier*, 477 U.S. 478 (1986) ................................................................ 10

*Picard v. Connor*, 404 U.S. 270 (1971) ................................................................. 11

*Porter v. McCollum*, 558 U.S. 30 (2009) ............................................................... 21

*Rompilla v. Beard*, 545 U.S. 374 (2005) ......................................................... 18, 25

*Simmons v. South Carolina*, 512 U.S. 154, (1994) ................................................ 17

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ............................................. 4, 17, 22

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................... 19

*United States v. Booker*, 543 U.S. 220 (2005) ....................................................... 6

*United States v. Frady,* 456 U.S. 152, (1982)...........................................................2

*Williams (Terry) v. Taylor*, 529 U.S. 362 (2000) ................................................. 21

**Federal Court Opinions**

*Aiken v. Spalding*, 841 F.2d 881 (9th Cir. 1988) .................................................. 11

*Boeckenhaupt v. United States*, 537 F.2d 1182 (4th Cir. 1976) ...................... 1, 5, 7

*Byram v. Ozmint*, 339 F.3d 203 (4th Cir. 2003) .............................................. 22, 23

*Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991) ............................................. 20

*Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665 (7th Cir. 1990) .................... 11

*Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) .................................................. 11

*Guinan v. United States*, 6 F.3d 468 (7th Cir. 1993) .............................................. 2

*Monroe v. Angelone*, 323 F.3d 286 (4th Cir. 2003) .................................... 7, 14, 18

*Truesdale v. Moore*, 142 F.3d 749 (4th Cir. 1998).................................................22

*United States v. Caro*, 597 F.3d 608 (4th Cir. 2010) ............................................ 12

*United States v. Dodson*, 291 F.3d 268 (4th Cir. 2002) ............................................ 9

*United States v. Dyess*, 730 F.3d 354 (4th Cir. 2013) .................................... 5, 6, 7

*United States v. King*, 628 F.3d 693 (4th Cir. 2011) ................................................ 2

*United States v. Linder*, 552 F.3d 391 (4th Cir. 2009) ........................................ 5, 6

*United States v. Pettiford*, 612 F.3d 270 (4th Cir. 2010) ...................................... 13

*United States v. Roane*, 378 F.3d 382 (4th Cir. 2004) ........................................ 5, 6

*United States v. Thornton*, 327 F.3d 268 (6th Cir. 2003) ........................................ 9

*Winston v. Kelley*, 592 F.3d 535 (4th Cir. 2010) ............................................ 11, 12

*Wise v. Warden, Maryland Penitentiary*, 839 F.2d 1030 (4th Cir. 1988) ............. 11

*Wolfe v. Clarke*, 691 F.3d 410 (4th Cir. 2012) ........................................ 10, 13, 14

**Rules**

Fed. R. App. P. 32 .......................................................................................... 29

**Other**

§ 2254 ................................................................................................... 7, 10

§ 2255 .................................................................................................. *passim*

**Miscellaneous**

ABA Guidelines on the Appointment and Performance of Defense Counsel in
Death Penalty Cases (rev. 2003) .............................................................................27

iv

**REPLY BRIEF OF APPELLANT CARLOS DAVID CARO**

**Claim I.**

**The *Brady* claim based on the Government's suppression of BOP data on length of inmate incarcerations at ADX Florence.**

**A.    Introduction.**

Appellee posits two arguments in opposition.  First, according to Appellee, Caro is precluded from raising the claim brought pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), in the § 2255 motion because it is "the same substantive claim" raised on direct appeal and "questions fully considered by this court [on direct appeal]" cannot be relitigated in the § 2255 proceedings. Appellee's Brief at 36, 39 (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 83 (4th Cir. 1976)). Relatedly, Appellee also adopts the part of the district court's opinion that, by submitting new evidence not available at trial in support of a *Brady* claim, Caro is asking the court "to reverse this Court's ruling on the *Brady* claim," which it is not empowered to do.  App. Br. at 40 (quoting the district court's Opinion in which it denied § 2255 relief, JA 1958 n. 12).

Second, Appellee submits that, even with new evidence, Caro is unable to meet the materiality requirement to sustain his *Brady* claim.  Appellee argues that both parties' experts testified that ADX Florence "is not intended to be a permanent placement" and Caro cannot demonstrate "with certainty how long [he]

1

would be incarcerated" at ADX Florence if not sentenced to death.  App. Br. at 40, 42.

Due to the Government's continued suppression of relevant BOP data on lengths of incarceration at ADX Florence Caro's *Brady* claim has never been "fully considered" by the district court or this Court on direct appeal and is not barred from consideration in the § 2255 proceedings.  Caro can put it no better than this Court did in its opinion in *United States v. King*, 628 F.3d 693, 702 (4th Cir. 2011), that "a defendant cannot demonstrate that suppressed evidence would have changed the trial's outcome if the Government prevents him from ever seeing that evidence."  No circuit precedent cited by Appellee supports the proposition that a *Brady* claim is barred in § 2255 proceedings where a defendant, out of an abundance of caution, raises the claim on direct appeal so as not to have it ruled defaulted on later collateral review but the Government continues to suppress the requested *Brady* evidence throughout the appeal process.[1]

---

[1] The tension between raising a constitutional claim on direct appeal on an incomplete factual record because procedural default rules compel raising the claim as early as possible or risk default, as opposed to reserving the claim for collateral review and additional investigation, was described by the Supreme Court in *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("The background for our discussion is the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Id.* (citing *United States v. Frady,* 456 U.S. 152, 167-168 (1982); *Bousley v. United States,* 523 U.S. 614, 621-622 (1998)).  In *Massaro,* the Court abrogated a Second

2

Appellee's arguments with respect to materiality are also in error because Appellee erroneously characterizes the experts' testimony as simply agreeing that ADX Florence "is not intended to be a permanent placement" for Caro. Retired BOP Warden Hershberger, the Government's expert, testified that Caro would be stepped down to a less secure institution after only three years, while Caro's expert, Dr. Cunningham, in the absence of the suppressed BOP data, testified to largely anecdotal accounts of inmates having average incarcerations at ADX Florence of five years or more before being stepped down. In order to impress upon the jury Caro's likely future dangerousness as a reason to impose a sentence of death, the Government repeatedly emphasized in closing Warden Hershberger's opinion that Caro would be held only three years at ADX Florence if not sentenced to death. Evidence developed in the § 2255 proceeding, including that an inmate has been held at ADX Florence for 27 years, three others in excess of 18 years, 22

---

Circuit rule that compelled raising claims of ineffective assistance of counsel ("IAC") on direct appeal even where supported by the record due to the need for the district court to consider facts *dehors* the record. In support, the Court cited approvingly the concurring opinion in *Guinan v. United States*, 6 F.3d 468, 474 (7th Cir. 1993), where Judge Easterbrook observed that "[r]ules of procedure should be designed to induce litigants to present their contentions to the right tribunal at the right time." He believed that applying the usual procedural default rule to ineffective assistance claims "would have the opposite effect, creating the risk that defendants would feel compelled to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id.* This Court's analogous treatment of IAC and *Brady* claims is referenced at p. 9 *infra*.

3

in excess of ten years and 126 in excess of five years demonstrates there exists even greater daylight between the sentencing opinions of the parties' experts at capital sentencing than what Appellee suggests here.

Appellee's focus on the "lack of certainty" of Caro's prospective length of stay at ADX Florence is also misplaced because the capital sentencing jury is permitted to draw favorable inferences about the accused's "<u>probable</u> future conduct" from evidence he proffers at capital sentencing, *see Skipper v. South Carolina*, 476 U.S. 1, 4 (1986), and such inferences are not limited to what the accused proves with absolute "certainty." The Government's suppression of accurate BOP historical data on length of incarcerations at ADX Florence deprived the sentencing jury of factual information it required to make a reliable determination as to whether Caro should live or die.

## B. The *Brady* claim was not "fully considered" by this Court on direct appeal.

Caro argued in the reply to the Government's motion to dismiss that the *Brady* claim raised in the § 2255 motion was distinct from the *Brady* claim raised at trial and direct appeal because the Government's suppression of the material exculpatory BOP data on length of inmate stays at ADX Florence meant that Caro was compelled to raise the claim in the § 2255 motion supported by evidence *dehors* the record. JA 1627. Caro argued that any procedural default was excused

4

by the Supreme Court's decision in *Bousley*, 523 U.S. at 621-22, which the court rejected because the BOP data was not made part of the trial record "only because Caro did not then make the effort to do so." *Id.* n. 12.

1. **The Government suppressed the relevant BOP data at trial that would have informed this Court's determination of the materiality of the *Brady* claim.**

None of this Court's precedents cited by Appellee hold that a defendant is barred from raising a *Brady* claim in § 2255 proceedings after having been denied relief on a *Brady* claim on direct appeal. *See* Appellee's Br. at 39 (quoting *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013); *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009); *United States v. Roane*, 378 F.3d 382, 396 n. 7 (4th Cir. 2004), *United States v. Boeckenhaupt*, 537 F.3d 1182, 1183 (4th Cir. 1976)). Caro submits that *Brady* claims must be treated differently than the run-of-the-mine claims sought to be relitigated in *Dyess*, *Linder*, *Roane*, and *Boeckenhaupt* because no claim in any of those § 2255 cases derived their support from the unearthing of evidence that had been suppressed by the Government at trial – as occurred here. The claims in those cases were solely dependent on the quality of the movant's investigation and legal acumen. In all but *Boeckenhaupt*, who was *pro se*, a movant's counsel controlled the claims to be brought in the § 2255 motion and the unearthing of supporting facts.

Moreover, the claims in those cases presented purely legal questions that had earlier been adjudicated adversely to the defendant on direct appeal. In *Dyess*, 730 F.3d at 360, for example, the movant simply repeated in his § 2255 motion the same legal claim raised on direct appeal that drug quantity that would allow a sentence in excess of a statutory maximum was required to be submitted to a jury and proved beyond a reasonable doubt under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *Dyess* cited *Linder*, 552 F.3d at 396 (4th Cir. 2009), for the proposition that a § 2255 movant cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." Linder sought to raise in his § 2255 motion a claim that his drug sentence should be reduced under *United States v. Booker*, 543 U.S. 220 (2005), but that legal claim lost on direct appeal on the basis that the defendant executed an appeal waiver as part of his guilty plea and this Court refused to allow the defendant to circumvent the result of that appeal waiver simply by refiling the claim in a § 2255 motion. *Linder*, 552 F.3d at 396-97.

The *Dyess* Court also cited *Roane*, 378 F.3d 382 at 396 n.7, for the proposition that absent a change in the law, a defendant "'cannot relitigate' previously decided issues" in a § 2255 motion. 730 F.3d at 360. In *Roane*, this Court set forth in a footnote four claims raised in the movant's § 2255 motion that

"were already addressed and rejected on direct appeal" and were, therefore, barred from relitigation on collateral review. Two claims raised purely legal issues while two other claims raised issues of sufficiency of the trial evidence. None of Roane's claims was predicated on new evidence or newly-unearthed evidence that had been suppressed by the Government.

Finally, *Dyess* quoted *Boeckenhaupt*, 537 F.3d at 1183, for the proposition that a defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]." 730 F.3d at 360. The Court ruled three of the *pro se* movant's seven claims to have been "fully considered" on direct appeal and not susceptible to new adjudication in the § 2255 proceeding. Caro's *Brady* claim was simply not "fully considered" on direct appeal where the Government withheld material exculpatory BOP data that the district court required for its decision and this Court required in order to decide the materiality prong of *Brady* on direct appeal. In an analogous § 2254 situation, this Court rejected the state's argument that a § 2254 petitioner was limited to consideration of the *Brady* claim exhausted in state court where its suppression of new *Brady* material "precluded the state courts from considering those items." *See Monroe v. Angelone*, 323 F.3d 286, 298 (4th Cir. 2003).

Appellee's position that § 2255 provides Caro no vehicle for bringing his

7

*Brady* claim based on newly-unearthed evidence, and that he should be denied the production of reliable BOP data in discovery, incentivizes the Government's suppression of *Brady* material at trial. It would permit the Government to "run out the clock" on the disclosure of *Brady* material at trial and, if a § 2255 movant were to raise the *Brady* claim, unsuccessfully, on direct appeal – whether on a record that is inadequate to prove materiality due to the Government's suppression or even where, as here, the magistrate is sufficiently convinced of the likely existence of material exculpatory evidence that she orders the Government to disclose the BOP data (only to be reversed by the district court) - the movant will be forever barred from raising the robust *Brady* claim in his § 2255 motion should he somehow later unearth the *Brady* material.

The Supreme Court has allocated the risk of non-disclosure of material exculpatory evidence to the prosecution:

> This means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. *See Agurs,* 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure"). This is as it should be. Such disclosure will serve to justify trust in the prosecutor as "the representative ... of a sovereignty ... whose interest ... in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States,* 295 U.S. 78, 88 (1935).

*Kyles* 514 U.S. 419, 439 (1995). There is no reason for this Court to deviate from that allocation of risk in circumstances where the Government's suppression

8

denied the district court the opportunity to assess materiality on a complete record at trial and, as a result, this Court later lacked the record necessary to render an accurate judgment on *Brady* materiality on direct appeal.

This Court recognized in *United States v. Dodson*, 291 F.3d 268, 275 (4th Cir. 2002), that *Brady* claims, like ineffective assistance of counsel claims, often arise in collateral proceedings, doubtless due to the fact that they derive their support from evidence *dehors* the trial record. The Supreme Court has gone so far as to strike a Second Circuit rule that required certain ineffective assistance claims to be raised on direct appeal rather than on collateral review even if the claim could have been raised on direct appeal, *see Massaro*, 538 U.S. 500, and the Sixth Circuit has preemptively refused to consider an ineffective assistance claim raised on direct appeal where "[i]t has long been the practice of this court to defer the issue of the ineffectiveness of trial counsel to collateral attack." *United States v. Thornton*, 327 F.3d 268, 271 (6th Cir. 2003). The *Massaro* Court stated that, "[w]ithout factual development . . . an appellate court may not be able to ascertain whether the alleged error was prejudicial." 538 U.S. at 505. Similarly, the adjudication of *Brady* claims in the controlling decisions of the Supreme Court began with complete records developed in collateral proceedings, which allowed the Supreme Court to fully consider the *Brady* claims alleged, including *Brady*

9

materiality. *See Brady*, 373 U.S at 85; *Kyles*, 514 U.S. at 422.

Finally, in the alternative, the Court should find that a factor external to the defense, to wit, the Government's suppression of reliable BOP data, constitutes cause to excuse any procedural default arising from Caro's failure to present the *Brady* claim on a developed record at trial and the necessity of raising the *Brady* claim in the § 2255 motion. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986). This Court has held that the prosecution's suppression of *Brady* evidence constitutes such an external impediment that, assuming the other *Brady* factors are met, excuses the procedural default of the *Brady* claim. *See Wolfe v. Clarke*, 691 F.3d 410, 420 (4th Cir. 2012). Caro submits that the *Brady* factors are met here.

The Court should reject Appellee's argument that Caro may not bring a *Brady* claim in the § 2255 motion bolstered with evidence suppressed by the Government at trial.

### 2. The present claim is not the "same claim" litigated at trial and on direct appeal.

Due to the absence of precedent of this Court or the other circuits with respect to when a claim may be described as the "same claim" when it is raised in § 2255 proceedings *with material new evidence* after having been denied on direct appeal where it was unsupported, Caro analogizes to "new claim" jurisprudence in the § 2254 context. A federal habeas claim must be "fairly presented" to the state

10

courts, including the "constitutional claim" and its supporting facts, in order to exhaust the claim in state court. *See Picard v. Connor*, 404 U.S. 270, 277 (1971). This Court has held that fair presentation requires a petitioner to present the operative facts in support of the claim and the controlling legal principles. *Winston v. Kelley*, 592 F.3d 535, 549 (4th Cir. 2010) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997)). This Court has further held that exhaustion of a claim does not occur where the new evidence admitted for the first time in federal court places the case "in a significantly different and stronger evidentiary posture." *Wise v. Warden, Maryland Penitentiary*, 839 F.2d 1030, 1033 (4th Cir. 1988). Similarly, a sister circuit has held that "[a] claim has not been fairly presented in state court if new factual allegations either "fundamentally alter the legal claim already considered by the state courts" or "place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens v. Ryan*, 740 F.3d 1302, 1318 (9th Cir. 2014) (*en banc*) (quoting *Vasquez v. Hillery*, 474 U.S. 258, 260 (1986), *Aiken v. Spalding*, 841 F.2d 881, 883 (9th Cir. 1988)). The *Dickens* Court terms that a "new claim," while the Seventh Circuit has described it as a "materially different" claim. *Cruz v. Warden of Dwight Corr. Ctr.*, 907 F.2d 665, 669 (7th Cir. 1990). In *Winston*, this Court ruled that where a petitioner presented "no evidence" to the state courts in his

11

attempt to exhaust, "the claim will be fundamentally altered by the new evidence presented to the district court" and deemed not susceptible to proof with new evidence sought to be admitted for the first time in federal habeas. 592 F.3d at 550. The claim is, in essence, a new claim.

This Court held on direct appeal that "[b]ecause Caro can only speculate as to what the requested information might reveal, he cannot satisfy *Brady's* requirement that the requested evidence "would be 'favorable to the accused.'" *United States v. Caro*, 597 F.3d 608, 619 (4th Cir. 2010) (quoting *Brady*, 373 U.S. at 87). Caro submits that the Court's holding was essentially the same as the ruling in *Winston* that would bar the consideration of new evidence in federal court were the defendant to have produced "no evidence" in the state court to exhaust the claim. In essence, Caro, like Winston, has presented a new claim, not the "same claim" raised on direct appeal.

## C.    The suppressed BOP data was favorable to Caro.

Appellee demonstrates ambivalence by conceding that the new data Caro unearthed in support of the § 2255 motion "appears to be *favorable* to his position on future dangerousness," App. Br. at 40 (italics added), but stating later in the same argument that "Caro has again failed to show that the requested evidence is *favorable*." App. Br. at 42 (italics added). The inconsistency is of no moment

12

here, however, because the Government failed to contest in the district court

Caro's assertion that he met *Brady's* first prong requirement that the suppressed

evidence be "favorable to the accused." *See Brady*, 373 U.S. at 87. The law of

this circuit holds "that failure to present argument before the district court

constitutes waiver before this court." *United States v. Pettiford*, 612 F.3d 270, 281

(4th Cir. 2010). Even in the absence of Appellee's waiver, there can be no serious

question that the BOP data suppressed by the Government was "favorable" to

Caro.

This Court has held that evidence that exculpates or impeaches is

"favorable" within the second prong of *Brady*. *See Wolfe*, 691 F.3d at 423 (citing

*Banks v. Dretke*, 540 U.S. 668, 691 (2004)). The BOP data suppressed here tended

to "exculpate" Caro of the capital sentence because it tended to undermine the

Government's theory that Caro would be lethally dangerous in the future if not

executed by showing he could be detained at ADX Florence until he aged out of

violence later in life; and, it "impeached" Warden Hershberger's testimony that

Caro could only be detained there for three years. The suppressed BOP evidence

was favorable to Caro.

**D.    The suppressed BOP data was material.**

The crux of the issue here is whether the BOP data suppressed by the

13

Government was "material" within the contemplation of *Brady* and this Court's precedents such as *Monroe*, 323 F.3d at 301-02, and *Wolfe*, 691 F.3d at 424, that is, whether there is a reasonable probability that a single juror would have voted for a sentence of life if he or she were aware that Caro could be held indefinitely at ADX Florence if not sentenced to death. The testimony of Dr. Cunningham, the defense expert at capital sentencing did not come close to apprising the jury of the likely length of Caro's stay at ADX Florence. Dr. Cunningham possessed only anecdotal hearsay evidence that some inmates might be housed at ADX Florence for more than three years, including from an ADX Florence official that five inmates in ADX's history had been there for more than twelve years and the average stay was five years. JA701.

Appellee's responsive brief is disingenuous. Appellee omits any reference in its brief to the specifics of Warden Hershberger's sentencing hearing testimony, which Caro quoted in his opening brief (at 17), that Caro would be "stepped down" to a less secure facility than ADX Florence *after only three years*. JA 837-38, 841-42. In *Kyles*, 514 U.S. at 444, the Supreme Court stated that it is the prosecution's emphasis on its evidence in closing argument that defines just how material the *Brady* evidence is that the prosecution has suppressed. Here, the Government argued definitively in closing, based on Warden Hershberger's testimony, that

14

Caro's stay at ADX Florence "would be three years." JA 923-24. *See* Caro's Op.

Br. at   In rebuttal, the prosecutor stated:

> Who did the Government call?  We called the former warden at ADX.
> What was his job after that?  He got promoted up where he was the
> Regional Director over all those prisons, including Terre Haute and
> ADX.  Again, you decide what the facts are. You decide, *is he going
> to get out in three years as Warden Hershberger says from ADX*, or is
> he going to get out in five years as Dr. Cunningham says?

JA 979 (italics added).  The Government clearly intended the jury to understand

from Hershberger's testimony that Caro would serve only three years at ADX

Florence.

The Government's assertion was misleading and could have been disproved

had the district court affirmed the magistrate judge's decision to compel the

production of the BOP data.  The evidence attached to Caro's § 2255 motion

shows that one inmate had resided at ADX Florence and its predecessor, USP-

Marion, for 27 years (JA 1342); three were held at Florence for more than 18 years

(JA 1220 ¶ 4); 22 for more than ten years (JA 1341-44); and, 126 for more than

five years.  JA 1751-52 ¶ 7.  Dr. Cunningham testified at sentencing that ADX

Florence has consistently held 490 inmates since it opened in 1994.  JA 1338-39.

The evidence Caro obtained from a New Mexico firm in a civil case against the

BOP concerned only 69 inmates who returned the firm's questionnaires in

litigation that occurred over the course of five years.  In addition, Caro's FPD

15

investigator was able to flesh out a few more inmates via "limited public data" but she averred that her "numbers are necessarily incomplete and are believed to under-represent the total number of inmates who have been designated to ADX-Florence for more than three years." JA 1751 ¶ 5. Rather than Caro "speculating what the data might reveal," *see* App. Br. at 42, with a few keystrokes, the BOP can produce accurate data on length of stays at ADX Florence during its history, including for those who have killed while in federal custody, and remove from the materiality calculus the opinions of dueling sentencing experts that appear to be based on flawed data and hearsay.

Finally, the Court should reject Appellee's argument that the claim should be rejected because "regardless of statistical data, Caro would be evaluated on an individual basis, looking at his own behavior – unknowable at this time – before determining whether or when he would be stepped down within the BOP system." *Id.* It implies Caro's risk level could be underestimated by BOP professionals and he will not be housed for an appropriate length of time at ADX Florence before being stepped down. Caro assumes a higher level of competency on the part of the BOP, whose decisions could literally be a matter of life or death, and reiterates the likelihood that his incarceration could extend more than 25 years and his "aging out of violence" if required for prison security. JA 445-46.

Moreover, Appellee's theory that the "lack of certainty" as to the length of Caro's incarceration at ADX Florence defeats his *Brady* claim is fallacious. If certainty were required, the district court would have excluded the testimony of Dr. Cunningham and Warden Hershberger, whose opinions were intended to allow the jury to gauge future dangerousness based on probabilities. The court properly admitted the evidence. The Supreme Court has held that evidence of future dangerousness is relevant to "all sentencing determinations made in our criminal justice system." *Simmons v. South Carolina*, 512 U.S. 154, 162, (1994). The Court has required, however, accurate information bearing on future dangerousness to insure the reliability of the imposition of a death sentence under the Eighth and Fourteenth Amendments. *Id.* at 172 (citations omitted) (Souter, J., concurring); *Skipper v. South Carolina*, 476 U.S. 1, 5 n. 1 (1985).

In conclusion, this Court should rule that Caro properly brought his *Brady* claim in the § 2255 motion and that the suppressed BOP data is material, and the Court should vacate the decision of the district court, reverse his death sentence, and remand for a new penalty hearing. In the alternative, the Court should vacate the judgment of the district court and remand with instructions that the district court order the disclosure of the BOP data and, if issues of material fact arise from the disclosure, conduct an evidentiary hearing before ruling on the materiality of

Caro's *Brady* claim, as the district court did in *Monroe*, 323 F.3d at 296, prior to this Court's consideration of the *Brady* claims on appeal.

### Claim II.

**The ineffective assistance of counsel claim premised on trial counsel's failure to introduce in mitigation evidence of Caro's brain damage and cognitive dysfunction, and the failure to perform a thorough investigation of Caro's traumatic social history and produce it to a qualified mental health expert.**

The elephant in the room is the fact that defense counsel failed to obtain and review the report of the Government's mental health experts before making what Appellee describes in its brief as a "reasoned strategic choice" not to introduce the report and testimony of Dr. Spica, the defense neuropsychologist, at capital sentencing. App. Br. at 48. Counsel also failed to tender evidence of Caro's traumatic childhood to Dr. Caruso, Caro's forensic psychiatrist, prior to his reporting the unhelpfulness of his pretrial evaluation.

Appellee seeks to have the Court determine that counsel's performance in failing to introduce mental health mitigation was reasonable based on less than the thorough investigation of aggravation and mitigation compelled by *Rompilla v. Beard*, 545 U.S. 374 (2005), where Appellee argues that the decision of counsel not to present Dr. Spica's opinion that Caro suffered from organic brain damage (frontal lobe dysfunction) and cognitive deficits that would have mitigated the

18

murder, was reasonable based on "the circumstances known to them" or "based on information they had before them." App. Br. at 46, 48. Modern Supreme Court Sixth Amendment precedent and the ABA Guidelines upon which the cases rely as guides in defining reasonably competent performance of trial counsel in death penalty cases do not allow for the passivity on the part of defense counsel that Appellee argues the Court should find reasonable here.

Appellee argues that Caro has not established the deficient performance of his trial counsel under the first prong of *Strickland v. Washington*, 466 U.S. 668, 688 (1984). App. Br. at 46-53. Appellee further submits that Caro cannot prove a reasonable likelihood of a different outcome had counsel presented such evidence and thus cannot meet *Strickland's* prejudice prong. App. Br. at 54-58. Caro treats the arguments *seriatim*.

## A.    Trial counsel performed deficiently at sentencing.

The question for review is not, as Appellee repeatedly submits, whether the Court should craft a *per se* rule that mental health mitigation must always be presented at capital sentencing. App. Br. at 46, 48, 56. Caro has not advocated that. The question is simply whether defense counsel rendered deficient performance under the first prong of *Strickland*, 466 U.S. at 688, where counsel never saw the report of the Government's mental health experts before deciding

19

not to present Caro's evidence of organic brain damage and related diagnosis of Cognitive Disorder, and violated the duty of reasonable investigation by failing to proffer Caro's traumatic social history to his mental health expert who could explain to the jury the effects of that history on his mental functioning at the time of the homicide.

    1.    ***Bunch* and the other authorities cited by Appellee are readily distinguishable.**

The decision in *Bunch v. Thompson*, 949 F.2d 1354 (4th Cir. 1991), upon which Appellee relies heavily in support of its argument that Caro's counsel performed an adequate investigation into the Government's case regarding mental health aggravation is distinguishable due to a critical factual difference between that case and *Caro*: Bunch's counsel interviewed the prosecution psychiatrists *before* deciding whether to present mental health mitigation at capital sentencing. They therefore knew that the defense psychiatrist would be cross-examined in a way that would "reinforce all the negative aspects of Bunch's self-destructive behavior" and "unusual sexual orientation aspects of the case," which counsel sought to limit. *Id.* at 1364. This Court ruled that "[h]aving interviewed the state psychiatrists in addition to their own witness, counsel made a reasoned strategic choice not to offer psychiatric testimony" at the mitigation phase of a state capital trial. *Id.*

20

Here, defense counsel had no access to the report of the Government's neurologist, Dr. Phillips, and neuropsychologist, Dr. Montalbano, and could not therefore make a *reasoned strategic choice* not to call the defense neuropsychologist, Dr. Spica, at sentencing.    That Dr. Phillips had a good reputation and was known to do well on the stand, App. Br. at 48, without reference to what he actually diagnosed and how he supported that diagnosis, cannot be deemed strategic.    Reasonably competent counsel would have given the Government notice of Caro's intent to introduce the mental health mitigation, read the report of Dr. Phillips and Dr. Montalbano, and had Dr. Spica and Dr. Hyde, the defense neurologist, perform the necessary critiques of the Government's report. At that point, counsel could have made a strategic decision, but they were required to perform the reasonable investigation first.

Caro cited the Supreme Court's decisions in *Williams* (*Terry*) *v. Taylor*, 529 U.S. 362, 393 (2000), and *Porter v. McCollum*, 558 U.S. 30, 40 (2009), in his opening brief for the proposition that it is not enough for defense counsel in a capital case merely to perform an investigation of his client's social history. Counsel has a corollary duty to present such evidence unless the failure to do so, according to the *Porter* Court, 559 U.S. at 40, reflects "reasonable professional judgment."    The additional cases cited by Appellee for the proposition that Caro's

21

counsel made reasoned strategic choices not to present mental health mitigation are also distinguishable on the specific facts and strategies developed by counsel in those cases. App. Br. at 50 (citing *Truesdale v. Moore*, 142 F.3d 749 (4th Cir. 1998); *Byram v. Ozmint*, 339 F.3d 203 (4th Cir. 2003)).

In *Truesdale*, defense counsel presented a mitigation case that highlighted the fact that the homicide for which the defendant was sentenced to death was the *sole* crime of violence of which he had ever been convicted and that he was a "normal person with a single aberrant episode of violence." 142 F.3dd at 754. Counsel also presented evidence pursuant to *Skipper*, 476 U.S. 1, that Truesdale had the ability "to adapt to prison life." *Id.* at 752. This Court ruled counsel to have pursued a "reasonable strategy" in failing to challenge the gruesome facts supporting the jury's guilt phase verdict and steering away from mental health evidence that his client had a substance abuse problem that caused organic brain dysfunction - with attendant difficulty on cognitive tasks and judgment - which "would not help portray Truesdale as normal and capable of rehabilitation." *Id.* at 755.

In *Byram*, 339 F.3d 209, the Court found that counsel performed a social history investigation and presented evidence of the "traumatic circumstances of [defendant's] youth" at sentencing, and that counsel did not perform deficiently in

22

failing to present the testimony of a forensic psychologist and forensic psychiatrist. Those experts performed an EEG and an MRI, which failed to achieve the desired effect of demonstrating that the defendant suffered brain damage from Fetal Alcohol Syndrome that would have mitigated the offense. Birth records of the defendant's mother failed to show she consumed alcohol while pregnant. *Id.* at 210. In the absence of an FAS diagnosis, those experts were left only with aggravating diagnoses of "antisocial behavior." *Id.* Keeping out reference to Byram's antisocial behavior constituted reasonable strategy.

Caro, on the other hand, had a more substantial criminal history than the defendant in *Truesdale* and a mitigation theory that he was a nice guy having a bad day would not have resonated with the sentencing jury. Reasonably competent counsel would have mitigated the murder with available mental health evidence that Caro suffered from cognitive and anxiety disorders that rendered him unable to "sort through information provided to him," thereby impairing his judgment and making him more impulsive and suggestible. JA 1333-34. Even "under calm, controlled conditions," Caro's reasoning ability was that of a ten-year-old, but under pressure, his reasoning would be significantly more impaired. *Id.* The conflict with his cellmate over the disposition of uneaten breakfast food that day, and the propriety of the prison breaking with etiquette by placing the victim in

23

Caro's cell after Caro had rejected the placement on the previous day, certainly could have significantly impaired Caro's judgment and heightened his impulsivity.

The need for mental health mitigation was exacerbated where, due to the district court's pretrial ruling, the Government was not required to produce the reliable BOP data on the length of time inmates spent at ADX Florence and, by extension, how much time Caro was likely to spend there prior to his aging out of violence. Caro's mitigation case was otherwise *de minimis*. While his counsel presented social history testimony from Caro's ex-wife, daughter, several aunts, and a former teacher, none of the witnesses had even seen Caro for more than seven years prior to trial and could not give the jury contemporary appraisals of his character that might serve as a basis for the jury to sentence him to life rather than death.

**2.      Appellee fails to address *Rompilla's* requirement that defense counsel produce evidence of a client's traumatic social history to a qualified mental health expert as part of a reasonable mitigation investigation.**

Counsel also performed deficiently in failing to tender Caro's traumatic social history to the defense psychologist, Dr. Caruso, and a forensic psychiatrist, like Dr. Schwartz-Watts. Dr. Schwartz-Watts confirmed the diagnosis of Dr. Spica that Caro suffered from Cognitive Disorder NOS, but she also contributed in the § 2255 proceeding her additional explanation that his exposure to traumatic incidents

24

of domestic violence during his formative years likely contributed to his cognitive deficits and that he exhibited symptoms of PTSD. JA 1290. These cognitive deficits and trauma-based anxiety disorder made him "increasingly anxious and unable to use all of the cognitive strategies available to him," and when he becomes more anxious, "he is more likely to use poor judgment." JA 1295.

Appellee correctly notes that, in *Rompilla*, 545 U.S. 374, the Court held that counsel performed deficiently in failing to review a file regarding their client's prior conviction that the prosecution announced it would introduce at capital sentencing. Appellee fails to distinguish that deficient performance in *Rompilla* from the failure to review the Government's experts' report here.

Moreover, Appellee fails to acknowledge the portion of the holding in which the Court found counsel's performance deficient because the evidence of Rompilla's traumatic social history contained in that file was not produced to three defense mental health experts prior to trial, with the result that they rendered benign diagnoses, *id.* at 382, but the traumatic history contributed in post-conviction proceedings to mitigating diagnoses of brain damage, a "third grade level of cognition after nine years of schooling," and a history of schizophrenia. *Id.* at 392.

Here, Appellee argues that the judgment of Caro's counsel not to call Dr. Spica at sentencing was informed by the evaluation of Caro by the defense psychiatrist, Dr. Caruso, which defense counsel averred was "not helpful to the defense." App. Br. at 48 (quoting Kalista Decl., JA 1256). In fact, after stating that the defense had not yet determined whether to call a mental health expert at the guilt or sentencing phases of trial, Mr. Kalista addressed just how limited the records were that were produced to Dr. Caruso, averring that "Dr. Caruso interviewed Mr. Caro about the crime, and he learned information that was not helpful to the defense. JA 1256 ¶ 15. The only other data on Caro that Caruso purported to possess was Caro's "BOP record and the incidents in which he was involved." JA 1119.

Counsel failed to tender Caro's social history to Dr. Caruso or to another forensic psychiatrist, like Dr. Schwartz-Watts, which, as in *Rompilla*, might have transformed a benign or "unhelpful" diagnosis into powerful mitigating evidence at sentencing. It might also have highlighted and explained the significance of the testimony of Caro's family members at sentencing.

**B.     Caro demonstrates *Strickland* prejudice.**

Appellee limits its prejudice discussion to the impact that testimony from Dr. Schwartz-Watts would have had on the outcome of sentencing. App. Br. at 54-

58.  Caro therefore rests his prejudice argument on the significance of Dr. Spica and Dr. Schwartz-Watts' opinions in his opening brief (at 46-54), except as to Appellee's final argument as to Dr. Schwartz-Watts.

Appellee argues that Caro cannot establish a reasonable probability of a different outcome if Dr. Schwartz-Watts had been retained to testify to the impact of Caro's horrific childhood history because Caro's social history *was* presented at sentencing. App. Br. at 55-56.  Yet, as noted in the Commentary to Guideline 10.11 of the ABA Guidelines on the Appointment and Performance of Defense Counsel in Death Penalty Cases (rev. 2003), as expert witness is "almost always crucial to explain the significance of the [social history] observations."    That explanation from expert witness, as would have occurred here had Dr. Schwartz-Watts been called, would have demonstrated a causal relationship between Caro's traumatic history and the crime, and would have corroborated Dr. Spica's opinion that such a causal relationship existed had he, too, been called at capital sentencing.

Caro has demonstrated *Strickland* prejudice and his entitlement to relief on the claim of ineffective assistance of counsel at capital sentencing.   In the alternative, he requests that the Court reverse the judgment of the district court and

27

remand with instructions for the court to allow discovery and, if necessary, an evidentiary hearing.

Respectfully submitted this 1st day of August, 2017.

s/Timothy M. Gabrielsen
Timothy M. Gabrielsen
Fay F. Spence
Brian J. Beck
Assistant Federal Public Defenders

Attorneys   for   Defendant-Appellant

## CERTIFICATE OF COMPLIANCE PURSUANT TO
### FED. R. APP. P. 32(A)(7)(C)

This Reply Brief complies with the type-volume limitation of Fed. R. App.

P. 32(a)(7)(B) because this brief contains 6,491 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

s/Timothy M. Gabrielsen
Attorney for Defendant/Appellant
Dated:  August 1, 2017

# CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2017, I electronically filed the attached document with the clerk of Court using the CM/ECF System which will send notice of such filing to the following registered CM/ECF users:

Jean B. Hudson
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902


s/Teresa Ardrey
Legal Assistant